IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GEO. D. WARTHEN BANK, <br><br>    *Appellant*, <br><br> v. <br><br> TONY TILLMAN, <br><br>    *Appellee*. | CIVIL ACTION NO. <br> **5:25-cv-00428-TES** |

**ORDER AFFIRMING BANKRUPTCY COURT**

Before the Court is Geo. D. Warthen Bank's (the "Bank") appeal of the United States Bankruptcy Court's denial of its effort to dismiss Tony Tillman's Chapter 13 bankruptcy case. Specifically, the Bank asserts two grounds of error. *See* [Doc. 6, Appellant's Brief, p. 1]. First, it argues the Bankruptcy Court erred in holding Tillman complied with the provisions of his bankruptcy plan and 11 U.S.C. § 1325(a)(5)(C) by surrendering any rights and legal claims he had to certain collateral—even though he did not physically deliver the collateral. [*Id.*]. Second, the Bank argues the Bankruptcy Court erred in failing to dismiss the case under (1) 11 U.S.C. § 1307(c)(6) for "material default by the debtor with respect to a term of a confirmed plan"; (2) 11 U.S.C. § 1307(c)(1) for "unreasonable delay that is prejudicial to the creditor"; and (3) 11 U.S.C. § 1307 generally for cause. [*Id.*]. For the reasons set forth below, the Court **AFFIRMS** the

Bankruptcy Court's order denying the Bank's motion to dismiss.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Tillman filed for Chapter 13 bankruptcy on November 18, 2024. [Doc. 2, p. 1]. He filed a previous Chapter 13 bankruptcy case in 2023 that included the same loans at issue in this case, which were secured by his 2006 John Deere backhoe, a gooseneck trailer, and a 2005 Triton crappie boat (collectively, the "Collateral"). [Doc. 4, p. 3]. In that previous bankruptcy case, Tillman proposed to "surrender" (and, as explained below, that term is important) the same three items of collateral, and the Bankruptcy Court confirmed the plan. [*Id.* at p. 4]. After plan confirmation in the 2023 bankruptcy case, the Bank filed an adversary proceeding objecting to the dischargeability of Tillman's debts. [*Id.*]. However, the Bankruptcy Court dismissed the 2023 bankruptcy case after it granted the trustee's motion to dismiss for Tillman's failure to make the required payments. [*Id.*]. The dismissal obviated any need for the Bankruptcy Court to resolve the issue presented in the adversary proceeding. [*Id.*].

The main argument in the Bank's earlier adversary proceeding a centered around Tillman's inability to provide the location of the Collateral and its belief that he filed for bankruptcy in bad faith. [*Id.*]. This, of course, is critical to the arguments presented in this appeal. Via the Bank's prior adversary proceeding in the 2023 bankruptcy case, it knew that Tillman—during that case—couldn't locate the Collateral. It is also worth noting that in February 2023, a few months before the commencement of the previous

bankruptcy case, the Bank approved another loan to Tillman for the repair of the backhoe. [*Id.* at p. 3]. The Bank's representative testified that the Bank approved the loan without physically seeing the backhoe. [*Id.* at p. 10].

Fast forward a year to November 2024, when Tillman filed a new Chapter 13 case—this one. [*Id.* at p. 4]. Like his 2023 bankruptcy case, his 2024 bankruptcy plan also provided for a surrender of the Collateral—the same Collateral for which the Bank previously knew Tillman couldn't provide a location, and the same Collateral the Bank didn't ask to physically see when it renewed his last loan. [*Id.*]. After filing his petition and before the Bankruptcy Court confirmed the current Chapter 13 plan, Tillman moved for an extension of the automatic stay so he could again search for the Collateral. [Doc. 2, p. 2]. Importantly, the Bank did not object. [*Id.*]. And just like in his 2023 bankruptcy case, Tillman couldn't find the Collateral or even provide an address for it. [Doc. 6, Appellant's Brief, p. 7]. The Bankruptcy Court then held a hearing on plan confirmation, pursuant to 11 U.S.C. § 1324. [Doc. 2, p. 2].

Under the confirmation hearing statute, "[a] party in interest may object to the confirmation of the plan." 11 U.S.C. § 1324(a). Although Tillman had demonstrated once again that he had no idea where the Collateral was, neither the Bank nor any other creditor objected, and the Bankruptcy Court predictably approved the plan. [Doc. 2, p. 2]. A little over two months later, the Bank moved to dismiss. [*Id.* at p. 3]. The Bankruptcy Court continued the hearing for the motion to dismiss multiple times by

agreement of the parties to allow Tillman more time to search and provide a location for

the Collateral. [Doc. 6, Appellant's Brief, p. 2]. After the hearing, the Bankruptcy Court

orally announced its decision to deny the Bank's motion. [Doc. 2, p. 4]. Following the

Bankruptcy Court's Order Denying Motion to Dismiss, the Bank filed a Notice of

Appeal pursuant to Federal Rule of Bankruptcy Procedure 8002. [*Id.* at pp. 4–5].

## DISCUSSION

### A.    Standard of Review

"The district court in a bankruptcy appeal functions as an appellate court in

reviewing [a] bankruptcy court's decision." *Williams v. EMC Mortg. Corp.* (*In re

Williams*), 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam). The Court must "review [its]

bankruptcy court's factual findings for clear error and its legal conclusions de novo."

*Fla. Agency for Health Care Admin. v. Bayou Shores SNF, LLC* (*In re Bayou Shores SNF,

LLC*), 828 F.3d 1297, 1304 (11th Cir. 2016).

### B.    Chapter 13 Plan Confirmation and Waiver of Post-Confirmation Arguments

Chapter 13 proceedings are intended to adjust the debts of an individual by

creating a payment plan that is satisfied through the party's regular, future income. *In

re Kitchens*, 702 F.2d 885, 887 (11th Cir. 1983). The debtor makes payments to a

bankruptcy trustee who then disperses the funds to creditors until all debts have been

satisfied under the confirmed plan. *United States v. Devall*, 704 F.2d 1513, 1515–16 (11th

Cir. 1983). The debtor also has the option to surrender any collateral securing the claim

to the debtor rather than include that claim under a payment plan. *See* 11 U.S.C. §§ 1325(a)(5)(B)–(C). In addition to the debtor surrendering collateral or entering a payment plan, the claim will be allowed if the creditor accepts the plan. *Id.* at § 1325(a)(5)(A). Bankruptcy courts are required to hold a hearing for the Chapter 13 plan confirmation where "[a] party in interest may object to confirmation of the plan." *Id.* at § 1324(a). They will then confirm or deny the plan under the confirmation statute. *See id.* at § 1325.

Here, the Court must necessarily decide the issues surrounding waiver and argument preclusion. Parties are not permitted to "relitigat[e] issues that were or *could have been raised* in" an action resulting in "a final judgment on the merits of the action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added). Orders by bankruptcy courts that confirm a Chapter 13 plan are "given the same effect as any district court's final judgment on the merits." *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990).

The Bankruptcy Code explains that "[t]he provisions of a confirmed plan bind the debtor and each creditor" whether "the claim of such creditor is provided for by the plan" and whether "such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Likewise, "[a] claim . . . is deemed allowed, unless a party in interest . . . objects." *Id.* at § 502(a). These sections give Chapter 13 plans a statutory res judicata effect on certain arguments made after confirmation—most importantly,

arguments that could and should have been raised at the time of confirmation.

Existing precedent supports the same conclusion. The United States Supreme Court held that a Chapter 13 confirmation order is "enforceable and binding" when the creditor "had notice of the error and failed to timely object or timely appeal." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010) (holding that the confirmation of a Chapter 13 plan, not in accord with the Bankruptcy Code, was binding because the creditor had actual notice of the error before confirmation and did not object). Additionally, the Eleventh Circuit previously held that a bankruptcy trustee *who is aware of defects in a debtor's claim before confirmation*—and does not object to the plan at the confirmation hearing—is bound by the plan and precluded from bringing a post-confirmation adversarial proceeding on that issue. *Hope v. Acorn Fin., Inc.*, 731 F.3d 1189, 1196 (11th Cir. 2013); *see also Hope*, 731 F.3d at 1194–95 ("If a trustee, *like a debtor or creditor*, is obliged to make a timely objection to the confirmation of a plan, and foregoes an objection she is aware of, it is difficult to see why the trustee, *like a debtor or creditor*, would not also be bound by confirmation.") (emphasis added).

In another bankruptcy case, the Eleventh Circuit held that a creditor loses its right to object to a misclassified claim if it does not make this objection prior to confirmation. *Justice Oaks II*, 898 F.2d at 1553 (holding that because the claims asserted in the adversary proceeding could have been raised through an objection to confirmation of the Chapter 11 plan, the doctrine of claim preclusion (res judicata)

barred their relitigation in the adversary proceeding); *see also Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004) ("'If a creditor fails to protect its interests by timely objecting to a plan or appealing the confirmation order,' the creditor is foreclosed from challenging any of the plan's provisions, 'even if such a provision is inconsistent with the [Bankruptcy] Code.'") (quoting *Great Lakes Higher Educ. Corp. v. Pardee* (*In re Pardee*), 193 F.3d 1083, 1086 (9th Cir. 1999)). Lastly, the Eleventh Circuit held that a secured creditor is barred from "collaterally attack[ing]" a confirmed Chapter 13 plan, "when the secured creditor failed to object to the plan's confirmation or appeal the confirmation order." *Universal Mortg., Co. v. Bateman* (*In re Bateman*), 331 F.3d 821, 822 (11th Cir. 2003). In *Bateman*, the creditor challenged a bankruptcy court's denial of a motion to dismiss by arguing that § 1325 was "not compl[ied] with." *Id.* at 824. The Court summed up the creditor's argument and stated that the creditor sought to "avoid the res judicata effect of the plan's confirmation as to its claim . . . ." *Id.* The Eleventh Circuit affirmed the denial of the motion to dismiss and reasoned that the creditor failed to object to the plan prior to or at confirmation and thereby did not preserve its right to raise the issue later in the bankruptcy case after confirmation. *Id.* at 833.

Even though the Eleventh Circuit dealt with perceived claim deficiencies in *Hope*, *Justice Oaks II*, and *Bateman*—and not the debtor's ability to comply with the plan—the Court finds them relevant and persuasive to the case at bar. In addition, the Supreme Court's 2010 decision in *Espinosa* supports such a finding. The Court extends the

7

reasoning from these cases and holds that when the creditor has prior knowledge of the debtor's likely (almost certain) inability to locate collateral set to be surrendered, the creditor must raise its objection to the Chapter 13 plan's feasibility prior to or at the confirmation hearing. The Court's narrow holding applies when a creditor has prior knowledge of the debtor's inability to provide information on the collateral's location—confirmation is the appropriate time to argue about the statutory meaning of "surrenders" under 11 U.S.C. § 1325(a)(5)(C). Otherwise, such an argument is precluded by the res judicata effect of plan confirmation from being raised later in the pending bankruptcy case.

The Court is not concerned that its holding expressed herein will detrimentally affect bankruptcy claim holders in the future because it is narrowly limited to creditors with prior knowledge that a debtor doesn't know the whereabouts of the relevant collateral sufficient to raise an objection at confirmation. In addition, the Federal Rules of Bankruptcy Procedure already provide creditors with the adversary proceeding mechanism to address certain issues after confirmation—such as the dischargeability of a claim. *See* Fed. R. Bankr. P. 7001–7087. Thus, this Court's holding does not limit a creditor's ability to seek redress. Rather, it specifies the time and place to raise an issue of plan feasibility when that creditor has prior, material knowledge of a debtor's inability to locate collateral.

The Bank contends that it is not collaterally attacking the plan but rather seeking

to "compel Tillman to follow [the] plan." [Doc. 6, Appellant's Brief, p. 12]. Ultimately, this is an issue of plan feasibility—meant to be settled before confirmation—improperly dressed as a post-confirmation motion to dismiss for material default under 11 U.S.C. § 1307(c)(6). The Bank knew Tillman could not provide the Collateral's location (via the 2023 bankruptcy case) and therefore should have objected to the plan's feasibility (in the 2024 bankruptcy case) before or at confirmation. Since the Bank did not make an objection at the appropriate time, it waived this argument.

Assuming the Bank did object at confirmation, and the Bankruptcy Court confirmed the plan over objection, the Bank would be able to appeal the confirmation of the entire plan. Requiring a creditor to object at confirmation—when it had prior knowledge that a bankruptcy plan might be unfeasible—would iron out any perceived "wrinkles" in a plan at the front end and prevent the rug being pulled out from under the other creditors' once a sufficient and otherwise productive bankruptcy plan is already in place. In addition to the Court's sua sponte waiver analysis, the Bankruptcy Court's denial of the motion to dismiss is still to be affirmed as set forth below.

**C.      <u>Chapter 13 Dismissal Rule: 11 U.S.C. § 1307</u>**

To reiterate, based on the Bankruptcy Court's interpretation of "surrenders" under § 1325(a)(5)(C), the Bank argues the Bankruptcy Court erred by finding that Tillman complied with his bankruptcy plan. The Bank then argues that the Bankruptcy Court got it wrong when it did not dismiss Tillman's case for a "material default . . . of a

confirmed plan," "unreasonable delay," or generally for cause. 11 U.S.C. §§ 1307(c); 1307(c)(1); 1307(c)(6).

Motions to dismiss Chapter 13 bankruptcy cases are governed by § 1307. Under the statute, "the court . . . *may* dismiss a case under this chapter . . . for cause . . . ." *Id.* at § 1307(c) (emphasis added). The statute provides a list of what qualifies as cause, including, *inter alia*, "(1) unreasonable delay by the debtor that is prejudicial to creditors" and "(6) material default by the debtor with respect to a term of a confirmed plan." *Id.* at §§ 1307(c)(1); 1307(c)(6). The list of what qualifies as "cause" permitting dismissal is nonexclusive. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 372–73 (2007).

### D. "Material Default" Under 11 U.S.C. § 1307(c)(6) and the Meaning of "Surrenders" Under 11 U.S.C. § 1325(a)(5)(C)

Before it can dismiss a Chapter 13 plan, the Court must find "cause" under the dismissal statute. *See* 11 U.S.C. § 1307(c). Essentially, the Bank argues the Bankruptcy Court erred when it interpreted the term "surrender"—well, "surrenders" as it's literally written in the confirmation statute—to mean a debtor must only relinquish any legal claims and/or rights to "the property" as opposed to physically delivering the item to the holder. *Id.* at § 1325(a)(5)(C). And, as a result, the Bank then argues the Bankruptcy Court erred in holding that Tillman did not make a "material default" on the plan under § 1307(c)(6) when he failed to physically deliver or provide the location of the Collateral to the Bank. [Doc. 6, pp. 1–7]. The Bank's argument does not persuade the Court.

The Bankruptcy Court's ruling, and thus, this appeal, requires an inquiry into the meaning of "surrenders" within the context of Chapter 13 of the Bankruptcy Code. While the Eleventh Circuit previously defined "surrender" in the context of Chapter 7 Bankruptcy cases, *see, e.g.*, *In re Failla*, 838 F.3d 1170, 1177 (11th Cir. 2016), the parties concede that the Eleventh Circuit has yet to define "surrenders" under Chapter 13. [Doc. 6, Appellant's Brief, p. 4]; [Doc. 7, Appellee's Brief, p. 3]. The Bank argues that the "most straightforward interpretation" of "surrenders" requires the debtor "to deliver the collateral to the affected creditor." [Doc. 6, Appellant's Brief, p. 4]. In this case, the Bank believes that Tillman was statutorily required to not only surrender any legal right or claim to the backhoe, boat, or trailer but that he was mandated to bring them to the Bank (or at least tell the Bank their location). However, the plain and ordinary language of § 1325 cuts against the Bank's proposed interpretation. In short, barring, of course, any finding of fraud or bad faith, the Court agrees with the Bankruptcy Court that a debtor "surrenders" property—under § 1325(a)(5)(C)—when he relinquishes all rights and claims to the property *even if* he is unable to deliver or provide its location. *See* [Doc. 4, p. 14].

In cases involving statutory interpretation, courts first consider the text of the statute. *United States v. Stevens*, 997 F.3d 1307, 1314 (11th Cir. 2021). When the language employed by Congress is clear and unambiguous, the textual inquiry ends "because we must presume that Congress said what it meant and meant what it said." *United States*

*v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997)). In interpreting federal statutes, the Court reads the text in its "ordinary public meaning." *Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022). Likewise, when examining one particular word in a code section, courts should give it a "contextually appropriate ordinary meaning." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 174 (2012). In addition, courts must be mindful not to allow "general policy concerns [to] overcome the plain language of the statute." *In re Guillen*, 972 F.3d 1221, 1228 (11th Cir. 2020).

In determining the ordinary meaning of statutory phrases in the Bankruptcy Code, courts look to dictionary definitions. *In re Piazza*, 719 F.3d 1253, 1261 (11th Cir. 2013). Black's Law Dictionary defines "surrender" as "[t]he giving up of a right or claim." *Surrender*, *Black's Law Dictionary* (12th ed. 2024). The Court finds this definition appropriate because it applies to both tangible and intangible property, which Chapter 13 of the Bankruptcy Code is intended to cover. On the other hand, the Bank urges the Court to hold that "surrenders" means the same as "delivers." In support of its argument, the Bank cites other language in the subsection and states "[f]or the phrase 'to such holder' to have any meaning in the statute, it must mean delivery." [Doc. 6, Appellant's Brief, p. 4]; *see also* 11 U.S.C. § 1325(a)(5)(C). However, a debtor is fully capable of surrendering its rights and claims "to [the] holder" without physically delivering the item itself. Consider intangible property that can be put into the

12

bankruptcy estate. A debtor cannot physically deliver, *inter alia*, a house, a bank account, a patent, or a trademark "to the holder"; however, the legal rights and claims to these forms of property may be surrendered "to the holder" without delivery. *See Failla*, 838 F.3d at 1175. The Bank's proposed reading would produce absurd results under the Bankruptcy Code because Congress clearly did not intend for Chapter 13 to apply only to tangible property. The plain language of the statute does not support the Bank's contention that "delivery" should be read into § 1325(a)(5)(C).

Likewise, when the Court examines § 1325(a)(5)(C) in context of the entire Bankruptcy Code, it is still not convinced by the Bank's argument that "surrenders" equates to "delivery." In other sections of the Bankruptcy Code, Congress chose to use the word "deliver" multiple times to require the debtor to "physically turn over property." *Failla*, 838 F.3d at 1176–77; *see, e.g.*, 11 U.S.C. §§ 542(a); 543(b)(1). Likewise, the Eleventh Circuit recognizes that the Bankruptcy Code's use of the phrase "deliver or surrender" suggests that those two words have different meanings in the context of bankruptcy. *Failla*, 838 F.3d at 1177 (citing 11 U.S.C. § 727(d)(2)). Congress did not use any such language in the statute at issue here. Thus, the plain meaning of the text—when considering the statute in context with the rest of the Bankruptcy Code—is not ambiguous and does not suggest that "deliver" should be read into the word "surrenders" in § 1325(a)(5)(C).

Furthermore, existing authorities support the Court's interpretation. *See, e.g., In*

13

*re White*, 487 F.3d 199, 205 (4th Cir. 2007) ("[T]he word 'surrender[s]' [in § 1325(a)(5)(C)] means the relinquishment of all rights in property, including the possessory right, even if such relinquishment does not always require immediate physical delivery of the property to another."); *In re Cornejo*, 342 B.R. 834, 837 (Bankr. M.D. Fla. 2005) ("the [d]ebtor relinquishes its interest in the collateral when an intention to surrender is communicated" and "the collateral becomes part of the bankruptcy estate.").

In this case, Tillman gave up his rights and claims to the Collateral securing the Bank's claims when the Bankruptcy Court confirmed his unopposed plan, and this satisfied the "surrenders" requirement under § 1325(a)(5)(C). Thus, the Court holds that Tillman did not materially default under the confirmed plan, and the Bankruptcy Court did not err when it denied the Bank's effort to dismiss the underlying bankruptcy case pursuant to § 1307(c)(6).

### E.    "Unreasonable Delay" Under 11 U.S. C. § 1307(c)(1)

Relying on § 1307(c)(1), the Bank also argues the Bankruptcy Court erred when it held that Tillman did not create an "unreasonable delay . . . that is prejudicial . . ." when he failed to deliver or provide a location for the Collateral. [Doc. 6, Appellant's Brief, p. 1]. And, as a result, the Bank argues that the Bankruptcy Court erred by not dismissing Tillman's Chapter 13 plan. [*Id.*] Again, the Court is not persuaded.

In addressing this issue, the Bankruptcy Court relied on case law where the debtor had a duty to act, and their failure to act resulted in unreasonable and prejudicial

delay. [Doc. 4, pp. 17–18]. The Bank's argument that Tillman's actions were "unreasonabl[y] delay[ed]" necessarily relies on its argument that "surrenders" really means "deliver"—a proposition the Court rejected. As discussed above, Tillman has, in fact, surrendered the Collateral. Thus, the Court holds that his inability to deliver the Collateral did not cause an "unreasonable delay . . . that is prejudicial to the creditor," and the Court finds no error in the Bankruptcy Court's refusal to dismiss the underlying bankruptcy case for unreasonable delay under § 1307(c)(1).

F.      **"For Cause," Generally Under 11 U.S.C. § 1307**

Lastly, the Bank argues the Bankruptcy Court erred by not dismissing the plan "generally for cause." [Doc. 6, Appellant's Brief, p. 3]. The Court, again, is not swayed by the Bank's argument. The enumerated list of what qualifies as "for cause" under § 1307 is nonexclusive. *Marrama*, 549 U.S. at 372–73; *see also* 11 U.S.C. § 1307(c)(1)–(11). Outside of that list, whether cause exists to dismiss a bankruptcy case requires bankruptcy courts to look at the totality of the circumstances and equitable considerations. *Bank of Lumber City v. Brown*, No. CV 307-080, 2008 WL 11407366, at *3 (S.D. Ga. Nov. 13, 2008) (citing *In re Koller*, 357 B.R. 657, 661 (Bankr. M.D. Fla. 2006)). This "cause" analysis necessarily includes a consideration of the debtor's good faith, ultimately "whether the debtor is seeking to abuse the bankruptcy process." *Id.* (citation omitted). In *Bank of Lumber City*, the district court recognized that most courts hold a lack of good faith can constitute cause for dismissal of a Chapter 13 case. *Id.; see, e.g., Alt*

*v. United States* (*In re Alt*), 305 F.3d 413 (6th Cir. 2002); *In re Lilley*, 91 F.3d 491 (3d. Cir. 1996); *Eisen v. Curry (In re Eisen)*, 14 F.3d 469 (9th Cir. 1994); *In re Love*, 957 F.2d 1350 (7th Cir. 1992); *Cabral v. Shamban* (*In re Cabral*), 285 B.R. 563 (B.A.P. 1st Cir. 2002).

Noted above, "surrenders" is satisfied under § 1325(a)(5)(C) if the debtor relinquishes all rights and claims to the property securing the claim, *unless there is a finding of bad faith or fraud*. When a debtor files for Chapter 13 bankruptcy, bankruptcy courts must hold a hearing to confirm the plan, where creditors may object to the plan's confirmation. 11 U.S.C. § 1324(a). Chapter 13 plan confirmations require two findings of good faith—good faith in proposing the plan and good faith in filing the petition. *In re Brown*, 742 F.3d 1309, 1316 (11th Cir. 2014); *see also* 11 U.S.C. §§ 1325(a)(3); 1325(a)(7). Some bankruptcy courts hold that *prepetition* bad faith qualifies as "cause" under § 1307(c). *Marrama*, 549 U.S. at 367–72 (this "cause" is found before confirmation and therefore allows a bankruptcy court to dismiss the case *before* it is even confirmed). On the other hand, after the plan is confirmed, any argument that the plan should be dismissed due to prepetition bad faith conduct is barred by res judicata. *See id.* at 374 ("[A] ruling that an individual's Chapter 13 case should be dismissed . . . because of prepetition bad-faith conduct . . . is tantamount to a ruling that the debtor does not qualify as a debtor under Chapter 13."). The Bank had the opportunity to make an argument about Tillman's prepetition bad faith in proposing a plan that required him to surrender the Collateral although he no longer knew its location (or even its existence).

16

Recalling, however, that the Bank never objected to Tillman's proposed plan—meaning it waived any argument that he was proposing the plan in bad faith or fraudulently— the Court necessarily now finds any bad-faith arguments to be limited to supposed bad faith *after* plan confirmation.

The only potential evidence of post-confirmation bad faith to which the Bank focuses on is the Bankruptcy Court's finding that *one line* of Tillman's testimony about his lack of knowledge as to the Collateral's location was "not credible." [Doc. 4, p. 17]. Issues of witness credibility are findings of fact which require the reviewing court to afford significant deference to the court below. *In re Wagner*, 115 F.4th 1296 (11th Cir. 2024) (quoting *Feshbach v. Dep't of Treasury Internal Revenue Serv.* (*In re Feshbach*), 974 F.3d 1320, 1328 (11th Cir. 2020)). After reviewing the entirety of the evidence, the Court does not find the Bankruptcy Court's credibility determination to be clearly erroneous. *See In re Bayou Shores SNF*, 828 F.3d at 1304.

The Court looks at the totality of the circumstances and equitable considerations to determine if this post-confirmation testimony—found "not credible"—equates to bad faith and thereby warrants cause under § 1307. The record reveals that Tillman complied with the Chapter 13 plan to the satisfaction of the bankruptcy trustee and, most critically, to the satisfaction of the Bankruptcy Court, given its correct interpretation of "surrenders" in the Chapter 13 arena. [Doc. 4, pp. 11–12]. The only instance of deviation from this plan comes from Tillman missing one scheduled

17

payment. [*Id.* at p. 11]. However, the record reflects that Tillman missed this payment because he unexpectedly needed to pay $1770 out-of-pocket for prescription medicine not covered by insurance. [Doc. 3, pp. 42–43]. On the flip side, the Bank's involvement with Tillman's 2023 Chapter 13 case—specifically its adversary proceeding against dischargeability of the debts—evidences sufficient knowledge to require it to raise an objection at the confirmation of the current Chapter 13 plan. The Bank failed to do so. [Doc. 4, p. 5]. The Bank also did not object to the extension of the automatic stay prior to plan confirmation—an extension specifically given so that Tillman could try to locate the Collateral. [*Id.* at pp. 16–17 ("[T]he order granting [Tillman's] motion to extend the automatic stay . . . necessarily included a finding that [he] filed this case in good faith.")].

Lastly, it's worth noting that the Bank is one of 15 creditors listed under the current Chapter 13 plan and is the only one pushing for dismissal. [Doc. 2, pp. 1–6, 58–59]. As the bankruptcy trustee noted, all other creditors have an interest in a meaningful payout under the current plan. [Doc. 4, pp. 11–12]. In looking at the totality of the circumstances and equitable considerations, the Court holds that even though the Bankruptcy Court found one line of Tillman's post-confirmation testimony "not credible," it does not rise to a level of bad faith warranting general cause under § 1307. Thus, the Court concludes the Bankruptcy Court did not err when it also denied the Bank's efforts to dismiss Tillman's bankruptcy case generally for cause. This leaves only

a balancing of the equities for the Court's consideration.

### G.    Balancing of Equities

Even if the Court found cause, the decision to dismiss a case is discretionary.

*Bank of Lumber City*, 2008 WL 11407366, at *3. Instead, "resolution of the motion turns on

a balancing of the equities." *Id.* (citation omitted) ("[E]ven if there is a material default,

dismissal or conversion is not automatic, but rather a matter of the court's discretion.").

Assuming, *arguendo*, that the Court found cause under § 1307, the balancing of equities

still favors denying the Bank's motion to dismiss. As previously discussed, the

bankruptcy trustee opposed the Bank's motion to dismiss because Tillman missed only

one scheduled payment, and the existing payment plan provides for meaningful

payouts to other creditors. Again, there are 14 other creditors in this case. [Doc. 2, pp.

58–59].

On the other hand, the record shows the Bank approved its last loan to Tillman

to repair the backhoe without even seeing the equipment. [*Id.* at p. 3]. In addition, the

record clearly reflects the Bank's involvement in the 2023 bankruptcy case. [Doc. 4, p. 4].

This evidences that the Bank was aware of Tillman's lack of knowledge as to the

Collateral's location. However, the Bank did not object to the extension of the automatic

stay before confirmation. [*Id.* at pp. 16–17]. And again, the Bank did not object to plan

confirmation when it first should have. [*Id.* at p. 5]. If Tillman's ability to comply with

his Chapter 13 plan truly concerned the Bank, it had its chance to raise these concerns

multiple times before confirmation but, nonetheless, failed to do so. The Court exercises its considerable discretion and decides that it will not throw out an otherwise productive and sufficient bankruptcy plan to the detriment of the other 14 creditors simply because the Bank failed to raise any self-perceived issues of plan feasibility before confirmation.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Bankruptcy Court's ruling denying the Bank's motion to dismiss.

This 17th day of February, 2026.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**